UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OMG, INC., | ) |
|     Plaintiff, | ) |
| | )   Civil Action No. 05-30200-MAP |
| v. | ) |
| | ) |
| TRUFAST CORP., | ) |
|     Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S FOURTH, FIFTH AND SIXTH COUNTERCLAIMS**

Plaintiff OMG, Inc. ("OMG") initiated this matter by filing a complaint for infringement of United States Patent No. 6,050,765 ("the '765 patent") ("the Complaint") (Document No. 1). Defendant Trufast Corp. ("Trufast") retaliated by filing Defendant Trufast Corporation's First Amended Counterclaims ("First Amended Counterclaims") (Document No. 17) asserting several counterclaims including the three at issue in this motion: intentional interference (Fourth Counterclaim), unfair competition (Fifth Counterclaim) and product disparagement in violation of the Lanham Act (Sixth Counterclaim). Each of these was premised on the allegation that OMG filed the Complaint despite knowing that the '765 patent was invalid. As discussed below, OMG is entitled to dismissal of these counterclaims because the Noerr-Pennington Doctrine bars such business tort claims that seek to impose liability upon a party, such as OMG, for seeking judicial redress for possible violations of its patent rights.

**FACTS**

The only "facts," that Trufast has alleged actually addressing the validity of the '765 patent are the following. First, it asserted that "[i]n response to [OMG's] September, 2000 Infringement Allegations, counsel for Trufast supplied evidence to OMG of prior art

that invalidates the '765 Patent pursuant to 35 U.S.C. Sections 102 and/or 103." First Amended Counterclaims ¶ 6. Trufast did not attach the cited documents it refers to, nor does it allege how or why these documents rendered each claim of the '765 patent so clearly invalid as to render any claims made in reliance on that patent objectively unreasonable. Second, Trufast asserted that "OMG knows or should know that the '765 patent is invalid." First Amended Counterclaims ¶ 7. Nowhere else in the First Amended Counterclaims is there any allegation of fact relating to invalidity of the '765 patent, or any facts from which a jury could conclude that OMG's assertion of the patent was without any subjective intent to succeed on the merits.[1]

## ARGUMENT

**I.    <u>Noerr-Pennington presumptively bars Trufast's three counterclaims challenging OMG's infringement claims.</u>**

The United States Supreme Court developed the <u>Noerr-Pennington</u> Doctrine in the context of two separate opinions, in pertinent part to shield parties who petition the government from liability to third parties stemming from that petitioning activity. First, in <u>Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), the Court held that, because the First Amendment guarantees the right of petition, a party could not violate the Sherman Act by petitioning the government to pass or enforce laws. <u>Id</u>. at 138. Then, in <u>United Mine Workers v. Pennington</u>, 381 U.S. 657 (1965), the Supreme Court

---

[1] The Fourth Counterclaim asserts in relevant part only that "the timing of this lawsuit was improperly intended to disrupt [Trufast's] negotiations [with another company to purchase an interest in Trufast]" and that "[b]y making the above statements to Trufast's customers and by bringing accusations of infringement, knowing them to be false, OMG intended to interfere with TRUFAST's business relationships . . . ." First Amended Counterclaims ¶¶ 20, 23. The Fifth Counterclaim asserts only that "[t]he conduct of OMG constitutes unfair competition." First Amended Counterclaims ¶ 27. The Sixth Counterclaim asserts in relevant part that "OMG's representations concerning infringement by TRUFAST products, knowing the statements to be false, misrepresents the nature, characteristics or qualities of TRUFAST goods . . ." and that "OMG's statements were made in bad faith because OMG knows the

relied on Noerr to hold that the Sherman Act could not be violated through petitioning efforts, "regardless of intent of purpose," even if these efforts were "intended to eliminate competition." Id., at 670. The Supreme Court subsequently extended this "Noerr-Pennington Doctrine" to protect citizens' efforts to seek redress in the courts. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

It is now well settled that the Noerr-Pennington Doctrine shields a party from having to defend against allegations that it has committed a business tort by initiating litigation. See, e.g., IGEN Int'l, Inc. v. Roche Diagnostics GMBH, 335 F.3d 303, 310 (4th Cir. 2003) (noting universal application of Noerr-Pennington immunity to business torts like unfair competition, tortious interference with contract and malicious prosecution based on petitioning activities); Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 956 (S.D. Cal. 1996) (agreeing with majority of courts applying Noerr-Pennington to "any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity"). Thus, patentees like OMG are immune from counterclaims of intentional interference with advantageous relations, unfair competition, or product disparagement arising from their attempts to enforce their patents. See IGEN, 335 F.3d. at 312-13 (reversing jury verdict on unfair competition claim because patent owner's suit immunized by Noerr-Pennington); Carroll Touch, Inc. v. Electro Mechanical Sys. Inc., 15 F.3d 1573, 1581-83 (Fed. Cir. 1993) (in reliance on Noerr, affirming district court's grant of summary judgment to plaintiff on defendant's counterclaims of unfair competition and other state court counterclaims).

---

'765 Patent is invalid, unenforceable, or not infringed." First Amended Counterclaims ¶¶ 31, 34. None of these allegations are of facts indicative of objective invalidity of the '765 patent.

This umbrella of immunity extends to a patentee notifying potential infringers and threatening litigation as well as filing suit. See McGuire Oil Co. v. Mapco, 958 F.2d 1552, 1560 (11th Cir. 1992); Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709-10 (Fed. Cir. 1992) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts." (quoting Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37-38 (1913))); Raines v. Switch Manuf., 1997 WL 578547 at *6, 44 U.S.P.Q.2d 1195 (N.D. Cal. July 28, 1997) (Noerr-Pennington applies to litigation and threats to sue). The immunity bars any claims asserting liability based on litigation activity, and it can be raised even after filing an answer. See IGEN, 335 F.3d at 311 (district court erred by not granting Noerr-Pennington immunity it considered raised late).

Trufast's counterclaims of intentional interference with advantageous relations, unfair competition, and Lanham Act product disparagement depend directly on OMG's assertion of infringement of the '765 patent by Trufast. See First Amended Counterclaims at p. 2-5. Because these counterclaims assert business torts that challenge the propriety of OMG's litigation and pre-litigation assertions of infringement, they are barred by the Noerr-Pennington Doctrine and should be dismissed. Id.

II. **Trufast cannot overcome Noerr-Pennington's presumptive protection because it has not alleged facts that would be sufficient to establish that OMG's assertions of the "765 patent were a "sham."**

Trufast could have overcome the constitutional protections provided by the Supreme Court through the Noerr-Pennington Doctrine only if it had alleged specific facts that, if proven, would establish that OMG's assertion of its rights in the '765 patent was a "sham." The Federal Circuit has made clear that to establish the so-called "sham" litigation exception, a party like Trufast must plead *specific* facts that would establish that

4

the underlying suit was both 1) objectively baseless and 2) subjectively intended only to achieve anti-competitive effect with no intent to prevail on the merits.[2] <u>Carroll Touch</u>, 15 F.3d at 1582-83 & n.10 (citing <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S. 49, 113 S.Ct. 1920, 1929 (1993) (failure of either is dispositive)).

Such facts must be pleaded with particularity because "when a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." <u>Kottle v. Northwest Kidney Centers</u>, 146 F. 3d 1056, 1063 (9th Cir. 1998) (dismissing claims under <u>Noerr</u> for lack of specificity) (internal quotations and citations omitted). <u>Id.</u> It is not sufficient for the plaintiff to be able to prove *any* set of facts that would entitle it to relief. Rather, to overcome the presumption of immunity, "the burden falls on [the party opposing immunity] to allege facts sufficient to show that <u>Noerr-Pennington</u> immunity did not attach to plaintiff['s] actions." <u>McGuire Oil</u>, 958 F.2d at 1558 n.9; <u>IGEN</u>, 335 F.3d at 312.[3]

In the context of attacking a party's enforcement of its patent rights, this burden is particularly heavy. Patents issued by the United States are presumed valid and can be

---

[2] To establish this type of subjective intent, Trufast would have had to plead facts that if proven would establish that OMG subjectively brought the infringement claims in "bad faith," in the sense that the lawsuit concealed "an attempt to interfere <u>directly</u> with the business relationships of a competitor through the use of the governmental process -- as opposed to the outcome of that process -- as an anticompetitive weapon." <u>Carroll Touch</u>, 15 F.3d at 1582-83 & n.10. (internal quotations and citations omitted, emphasis in original). Subjective bad faith is irrelevant and not even considered until after proof of objective baselessness. <u>Id.</u> Trufast would have to prove both objective baselessness and subjective "bad faith" by "clear and convincing evidence." <u>Loctite Corp. v. Ultraseal LTD</u>, 781 F.2d 861, 876-77 (Fed. Cir. 1985), <u>overruled on other grounds by</u>, <u>Nobelpharma AB v. Implant Innovations, Inc.</u>, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

[3] Due to the nature of the constitutional interests that <u>Noer-Pennington</u> protects, this is not a situation where a party is to be given time to explore its generalized allegations through discovery <u>See</u> <u>Raines v. Switch Manuf.</u>, 1997 WL 578547 at * 6, 44 U.S.P.Q.2d 1195 (N.D. Cal. July 28, 1997) (granting motion to dismiss based on <u>Noerr-Pennington</u> without first allowing discovery); <u>Bath Petroleum Storage, Inc. v. Market Hub Partners</u>, 129 F. Supp. 2d 578, 594 (W.D.N.Y. 2000), <u>aff'd</u> 229 F.3d 1135, 2000 WL 1508873 (2d Cir. Oct. 11, 2000) (same).

shown to be invalid only upon proof by clear and convincing evidence. North American Vaccine, Inc. v. American Cyanamide Co., 7 F.3d 1571, 1579 (Fed.Cir. 1993) ("Under 35 U.S.C. 282 (1988) a patent is presumed valid, and at trial [the accused infringer] had the burden of proving facts by clear and convincing evidence showing that the patent is invalid.").[4] Patents also are presumed to be asserted in good faith, which presumption can be overcome only by affirmative evidence of bad faith. C.R. Bard, Inc. v. M3 Systems, Inc., 157 F. 3d 1340, 1348, 1369 (Fed. Cir. 1998). Accordingly, a patentee has the right to enforce its patent, "unencumbered by punitive consequences should the patent's validity or infringement not survive litigation," unless there is affirmative, clear and convincing evidence that its claims of infringement are objectively baseless as well as intentionally brought only to use the legal system as an anticompetitive weapon. Id.; see also Mallinckcrodt, Inc., 976 F.2d at 709-10 ("it is not an actionable wrong for one in good faith to make plain to whomsoever that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are.").[5]

    To allege not only that OMG's patent is invalid, but that OMG must have known of this supposed invalidity at the time it filed this litigation, Trufast would have had to allege specific facts of which OMG was then aware that clearly established the invalidity of each claim of its patent. See C.R. Bard, 157 F. 3d. at 1349; Checkpoint Systems, 412 F.3d at 1339. This would require allegations also that OMG was aware of facts supporting each

---

[4] Uncorroborated testimony by any interested party is insufficient as a matter of law to overcome the presumption of validity. Checkpoint Systems, Inc. v. All-Tag Security S.A., 412 F.3d 1331, 1339 (Fed. Cir. 2005) (reversing summary judgment of invalidity for lack of corroborating evidence); Articulate Systems, Inc. v. Apple Computer, Inc., 53 F. Supp. 2d 62, 66 (D. Mass. 1999) (suggesting that patentees move for summary judgment of validity where infringer lacks clear and convincing evidence of invalidity).

[5] These standards encourage investment and other commercial commitments in patents and protection of those investments by limiting potential punitive counterclaims of anti-trust, unfair competition and the like, if the patent turns out to be invalid, which counterclaims would otherwise operate to discourage patentees from asserting their rights. See C.R. Bard, 157 F. 3d at 1369.

element of invalidity, like publication or knowledge in the United States. See Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1578 (Fed.Cir.1996) ("Bard must persuade the trier of fact by clear and convincing evidence that the Cook catalog was published prior to Dr. Mahurkar's invention date"). Trufast has not met this heightened burden of establishing objective baselessness by OMG. Indeed, the allegations in the First Amended Counterclaims lack facts that would allow anyone to consider the '765 patent invalid as a matter of law. Furthermore, the allegations also do not present alleged facts that, if proven, would show that someone in OMG's shoes would have had to believe that the '765 patent was so clearly invalid, at the time it attempted to enforce its rights under the patent, that those claims were "objectively baseless."

Trufast only asserted that "[i]n response to the September, 2000 Infringement Allegations, counsel for Trufast supplied evidence to OMG of prior art that invalidates the '765 Patent pursuant to 35 U.S.C. Sections 102 and/or 103. . . ." and that "OMG knows or should know that the '765 patent is invalid." See First Amended Counterclaims ¶¶ 6, 7.[6] The Amended Counterclaim is devoid of any allegations about the "evidence . . . of prior art" or when, what, where, how or why any such evidence establishes that each claim of the '765 patent was either invalid under §102(a)[7] or §102(b)[8] or any other subpart of § 102 or § 103. Specifically, they fail to allege facts to support required elements of invalidity, like publication of the "evidence of prior art" more than one year before application for the '765 patent or knowledge in the United States by others before invention of the '765

---

[6] The relevant timeframe for OMG's alleged knowledge of invalidity is only the time of making the allegations or filing this matter, not its current or future knowledge or understanding. See C.R.Bard, 157 F.3d at 1369 ("Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects the suitor to antitrust liability").

[7] "[K]nown or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."

patent. Further, Trufast's conclusory allegations fail to allege corroborative evidence in support of each of these elements that would be sufficient to support either a jury's finding of invalidity of each claim or would have required a litigant in OMG's shoes to consider its patent invalid. In sum, there are no allegations that, even if believed, would establish that a reasonable litigant would consider the '765 patent prima facie invalid as a matter of law and, furthermore, so clearly invalid as to render any claims based on the patent "objectively baseless." See Raines v. Switch Manuf., 1997 WL 578547 at * 5-6, 44 U.S.P.Q.2d 1195 (N.D. Cal. July 28, 1997) (requiring facts establishing invalidity as matter of law; conclusory assertions insufficient to avoid Noerr-Pennington immunity because otherwise, "every claimant would be able to avoid the intent of the Supreme Court merely by alleging bad faith on the part of the party seeking to enforce the patent"); see also Kottle v. Northwest Kidney Centers, 146 F. 3d 1056, 1063-64 (9th Cir. 1998) (affirming granting of motion to dismiss under Noerr-Pennington for lack of specificity).[9]

## CONCLUSION

Defendant Trufast Corporation's First Amended Counterclaims failed to allege facts that would be sufficient to show that OMG's assertions of the '765 patent were based on a patent that was prima facie invalid as a matter of law, and also failed to allege

---

[8] "[P]atented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of the application for patent in the United States."
[9] Furthermore, Trufast has not alleged, and cannot prove, that invalidity was so far beyond question *at the time that OMG initially asserted the '765 patent against Trufast,* that any litigant would consider asserting the '765 patent "objectively baseless." Raines v. Switch Manuf., 1997 WL 578547 at *5-6, 44 U.S.P.Q.2d 1195 (N.D. Cal. July 28, 1997) (defendant must "establish a factual basis for its allegations that plaintiffs brought this action in bad faith, knowing that the patent upon which they were suing was invalid as a matter of law."); see also Concrete Unlimited, 776 F.2d at 1539 (error to award damages against plaintiff for enforcing patent, despite patent's later being held invalid). Trufast also has failed to provide allegations of facts whose proof would establish that OMG subjectively did not intend to prevail on the merits and made its claims with the sole purpose of using the legal process to interfere with competition. See Carroll Touch, 15 F.3d at 1582-83. It must prove both objective baselessness and subjective "bad faith" by "clear and convincing evidence." Loctite Corp. v. Ultraseal LTD, 781 F.2d 861, 876-77 (Fed. Cir. 1985), overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998).

sufficient facts to establish that OMG knew of any such invalidity before asserting its rights in the '765 patent. Trufast therefore has failed to plead facts which, even if proven, would establish that OMG's claims were "objectively baseless" or that OMG subjectively asserted its rights in bad faith. Because Trufast has failed to allege affirmative facts that would establish that OMG's assertions of the '765 patent against Trufast were "objectively baseless" or made in bad faith, OMG is entitled to <u>Noerr Pennington</u> immunity and dismissal of Trufast's Fourth, Fifth and Sixth Counterclaims. Accordingly, OMG respectfully requests the Court to dismiss the Fourth, Fifth and Sixth Counterclaims of Defendant Trufast Corporation's First Amended Counterclaims (Document No. 17).

Dated: May 9, 2006

Respectfully submitted,
The Plaintiff,
OMG, INC.
By Its Attorneys:

/s/ Seth M. Wilson
  James C. Duda
    BBO No. 551207
  Seth M. Wilson
    BBO No. 640270
  Gaston de los Reyes
    BBO No. 662200
  Bulkley, Richardson and Gelinas, LLP
  1500 Main Street, Suite 2700
  Springfield, MA 01115-5507
  Tel.: (413) 781-2820
  Fax: (413) 272-6806

Clifford P. Kelly, Esq.
Guy D. Yale, Esq.
Alix, Yale & Ristas, LLP
750 Main Street, 14th Floor
Hartford, CT 06103-2721
Tel: (860) 527-9211
Fax: (860) 527-5029

I hereby certify that, pursuant to Local Rule 7.1, I conferred with opposing counsel on May 9, 2006, and attempted in good faith to resolve or narrow the issues presented in this motion.

/s/ Seth M. Wilson
Seth M. Wilson

9

## CERTIFICATE OF SERVICE

    I, SETH M. WILSON, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic filing (NEF).

Michael J. Rye, Esq.
Daniel E. Bruso, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT 06002

                                              /s/Seth M. Wilson
                                              Seth M. Wilson

*Doc. 378,704*